UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**DOLPHINITE, INC.,**                         Chapter 7
    Debtor                          Case No. 04-12657-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**GARY W. CRUICKSHANK, CHAPTER 7
TRUSTEE OF THE ESTATE OF
DOLPHINITE, INC.,**
    Plaintiff
v.                                            Adv. P. No. 06-1333
**MID-CONTINENT CASUALTY COMPANY,
CLEAN SEAS COMPANY, INC., WESTPORT
MARINA, THE COAST DISTRIBUTION
SYSTEM, INC., KELLOGG MARINE, INC.,
C.C. MARINE DISTRIBUTORS, INC.,
WEST MARINE PRODUCTS, INC., and
UNITED STATES FIRE INSURANCE
COMPANY,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is "Defendant Mid-Continent Casualty Company's

Motion to Dismiss the Plaintiff's Complaint for Declaratory Judgment for Lack of Subject

Matter Jurisdiction, [and] Motion to Lift or Modify Automatic Stay." The Plaintiff and

Defendants West Marine Products, Inc. and Unites States Fire Insurance Company objected

1

to the Motion.[1] The Court heard the Motion and the Oppositions on October 25, 2006, at

which time it denied the Motion to Dismiss Plaintiff's Complaint for Declaratory Judgment

for Lack of Subject Matter Jurisdiction, finding only that the Trustee's Complaint for

Declaratory Judgment was within this Court's "related to" jurisdiction. *See* 28 U.S.C. §

1334(b). *See also* In re G.S. F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991).[2] Additionally, the

Court determined that the District Court, if it chose, could exercise supplemental

jurisdiction over the Declaratory Judgment Complaint as a result of its diversity

jurisdiction. *See* 28 U.S.C. § 1367; *see generally* In re Adamson, 334 B.R. 1, 9-10 (Bankr. D.

Mass. 2005).

At the October 25, 2006 hearing, Mid-Continent Casualty Company ("Mid-

Continent") raised, for the first time, an issue as the applicability of Florida's so-called

---

[1] On September 28, 2006, the Clerk entered defaults against Defendants C.C. Marine Distributors, Inc., Clean Seas Company, Inc., Kellogg Marine, Inc. and The Coast Distribution System, Inc. for failure to answer the Trustee's Complaint.

[2] In G.S.F. Corp., the First Circuit stated:

Related proceedings do not arise under the Bankruptcy Act; they must, however, "potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." In re Smith, 866 F.2d 576, 580 (3d Cir.1989); 28 U.S.C. 157(c). "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir.1984) (citations omitted).

938 F.2d at 1475.

2

"non-joinder" statute, specifically Fla. Stat. § 627.4136. That statue creates a condition precedent, in the form of a settlement or a verdict against an insured, before a cause of action accrues or can be maintained against a liability insurer. Mid-Continent also raised the issue of whether this Court should abstain from determining the Trustee's Declaratory Judgment Complaint. Following the hearing, the Court took the Mid-Continent's Motion, as orally amended, under advisement. The Court shall treat Mid-Continent's orally amended Motion as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this contested matter by Fed. R. Bankr. P. 7102.

The parties filed supplemental briefs addressing the issues raised by Mid-Continent. Although at the outset the issue appears to require a choice of law analysis, the Court finds the first issue that must be decided is whether Massachusetts and Florida law differ, and, if not, what relief should be afforded Mid-Continent.

The material facts necessary to decide Mid-Continent's Motion, as orally amended, are not in dispute. None of the parties present at the hearing requested an evidentiary hearing with respect to the limited issues before the Court. Accordingly, the Court makes the following findings of fact and rulings of law.

## II. BACKGROUND

Dolphinite, Inc. ("Dolphinite" or the "Debtor"), a distributor of boat hull paint, filed a voluntary Chapter 11 petition on April 1, 2004. It disclosed on its Statement of Financial Affairs that, at the time it filed its Chapter 11 petition, it was a party to various law suits

3

pending in state and federal courts, including, *inter alia*, a civil action pending in the United States District Court for the District of Massachusetts captioned <u>Dophinite, Inc. v. Clean Seas Co. and Suntec Paint, Inc.</u> (C.A. 03-CV-11659-PBS); a civil action pending in the United States District Court for the District of Massachusetts captioned <u>West Marine Products and United States Fire Insurance Co. v. Dophinite, Inc., Clean Seas Co., Inc., et al.</u>, (C.A. 04-CV-10251-PBS); and a civil action pending in the United States District Court for the District of New Jersey captioned <u>Coast Distribution [sic] et al. v. Dolphinite, Inc. et al.</u> (C.A. 03-CV-5927).[3] As set forth in more detail in the pleadings, Dophinite entered into a distribution agreement with Clean Seas Company ("Clean Seas"), a Florida corporation with a principal place of business in Florida, for the right to distribute a marine paint product containing enzymes and microbes developed by Clean Seas to prevent marine growth on boat hulls. Suntec Paint, Inc. ("Suntec") produced the product for Clean Seas. The civil actions involve breach of warranty claims with respect to the failure of the marine hull paint to perform as represented.

　　　Three months after the filing of its Chapter 11 case, the United States Trustee moved to convert Dophinite's case to a case under Chapter 7 for its failure to comply with the United States Trustee's operating requirements and to pay quarterly fees for the second quarter of 2004. On September 20, 2004, this Court granted the Motion of the United States

---

[3] The Trustee did not list this civil action in this Complaint for Declaratory Judgment. Rather, he listed a civil action pending in the United States District Court for the Northern District of New York captioned <u>Westport Marine, Inc. d/b/a ShipStore.com, Coast Distribution System, Inc., Kellogg Marine, Inc. and CC Marine Distributors Inc. v Clean Seas, Inc., et al.</u> (Civil Action No. 04-CV-0035-DNH).

Trustee to Convert Debtor's Chapter 11 Case to Chapter 7.

Approximately six months after his appointment, on March 25, 2005, the Chapter 7 Trustee filed a "Motion for Authority to Enter into Stipulation with respect to Payment of Expenses Regarding Products Liability Litigation and Grant of a Security Interest to United States Fire Insurance Company in the Proceeds of Such Litigation," seeking permission to grant United States Fire Insurance Company ("USFIC") a security interest in the proceeds of litigation involving the Debtor's products liability claims against Clean Seas and Suntec. According to the Trustee, USFIC agreed to advance $25,000 to pay litigation fees and expenses incurred in liquidating his claims against Clean Seas and Suntec. On May 11, 2005, the Court granted the Trustee's Motion and approved the Stipulation.

On November 22, 2005, the Trustee filed a five-count adversary proceeding (Adv. P. No. 05-1608) against Suntec, a Florida corporation with a principal place of business in Florida, claiming damages for breaches of warranties and negligence with respect to the manufacture of marine boat paint for Clean Seas, which Clean Seas then sold to Dolphinite under the distribution agreement. Four months later, the Trustee moved for approval of a settlement with Suntec pursuant to which Suntec agreed to pay the estate $65,000 and the parties agreed to exchange mutual releases. On May 1, 2006, the Court approved the settlement agreement between the Trustee and Suntec.

On August 9, 2006, the Trustee filed the Declaratory Judgment Complaint that is now before the Court. In his Complaint, the Trustee described the various civil actions

5

involving Dolphinite which are pending in the United States District Courts for the
Districts of Massachusetts and New York and itemized proofs of claim totaling in excess
of $2 million filed by the Defendants in this adversary proceeding in the Chapter 7 case,
including a $705,848.02 proof of claim filed by West Marine, a California corporation with
a principal place of business in California, and a $48,716.70 proof of claim filed by USFIC,
a New York corporation with a place of business in Massachusetts.  According to the
Trustee, "[e]ach of the  Claims is premised upon a failure of the Product purchased by
Dophinite from Clean Seas and, in turn, sold by Dophinite to the Claimants or the
Claimant's insured in the case of USFIC."  Specifically, the Trustee alleged that the boat
hull paint "suffered physical injury and failed because of the introduction of a foreign
substance and/or temperature change to the Product, resulting in a sudden degradation
of the enzymes and microbes."

The Trustee represented in his Complaint that Mid-Continent, an insurance
company with a principal place of business in Oklahoma, issued a policy of insurance with
general liability coverage to Clean Seas.  According to the Trustee, the policy limits are $2
million, with a limit of $1 million per individual occurrence, and a deductible on a per
claim basis of $1,000.  The Trustee also alleged that Dolphinite suffered property damage
loss within the meaning of the policy issued by Mid-Continent and, as such, is entitled to
recover the value of the property loss in an amount not to exceed $2 million, less any
applicable deductible.  According to the Trustee, Mid-Continent is asserting that each
individual retail sale constitutes a separate occurrence subject to the deductible and that

6

because no individual boat owner's claim exceeded the deductible amount it has no liability under the policy. Noting that Clean Seas entered into an Assignment for the Benefit of Creditors in Florida, the state of its incorporation and principal place of business, the Trustee stated:

> In addition to the controversy between Mid-Continent and the Trustee with respect to the amount of coverage available pursuant thereto, there existed [sic] controversy between Dophinite, Mid-Continent and the Defendants . . .with respect to how the proceeds if any from the policy should be divided, if at all, among Dophinite and the Claimants.

Based upon these allegations, the Trustee seeks a declaratory judgment that Dolphinite suffered a loss pursuant to the policy issued by Mid-Continent to Clean Seas and that Mid-Continent is obligated to the extent of the policy limits to pay for property damages suffered by Dolphinite as a result of the negligence of Clean Seas. The Trustee asks the Court to determine what, if any, claims the Defendants have against the policy; to order Mid-Continent to pay into Court the lesser of the amount necessary to satisfy the damages suffered by Dolphinite and any third party claimants or the policy limits less any appropriate deductibles; and to direct distribution of the insurance proceeds among Dolphinite and the various third-party claimants.

Prior to the Chapter 7 Trustee's filing of his Declaratory Judgment Complaint, Mid-Continent, on June 7, 2006, filed its own Complaint for Declaratory Judgment in the United States District Court for the Middle District of Florida, captioned Mid-Continent Casualty Company v. Clean Seas Company, Inc., Dophinite, Inc., Westport Marina, Inc., d/b/a Shipstore.com, The Coast Distribution System, Inc., Kellogg Marine Inc. d/b/a Kellogg

Marine Supply, C.C. Marine Distributors, Inc. West Marine Products, Inc., and Gary W.

Cruickshank, as Trustee of the Chapter Seven Estate of Dolphinite, Inc. (Case No. 3:06-CV-

518-J-32MCR). Through its Complaint, it sought, in its words," a determination of its rights

and obligations under a commercial general insurance policy it issued to its named insured,

Clean Seas." According to Mid-Continent, it inadvertently filed its Complaint for

Declaratory Judgment without first moving in this Court for relief or modification of the

automatic stay. After it obtained a stay of its action in Florida, Mid-Continent now seeks

relief from the automatic stay to pursue its action in Florida, relying upon its arguments

that Florida substantive law applies and that this Court should abstain from the

proceeding commenced by the Chapter 7 Trustee.

The instant proceeding and the declaratory judgment action commenced by Mid-

Continent are remarkably similar. In its Complaint, after reciting various pertinent

provisions of the insurance policy it issued to Clean Seas, Mid-Continent stated that it "is

in doubt of its rights under the policy of insurance issued to Clean Seas . . . and seeks a

declaration of its rights and obligations with respect to all the aforesaid actions filed against

Clean Seas by the Defendants and a finding . . whether, under the above-referenced policy

of insurance, Mid-Continent has a duty to defend or indemnify Cleans Seas . . . ."

## III. POSITIONS OF THE PARTIES

### A. Mid-Continent

_____Mid-Continent's arguments are straightforward. It posits that federal courts apply

the conflict of law rules of the forum state; that state courts apply their own conflict of law

8

rules to choice of law issues; and that courts in Massachusetts refer to 1) the Restatement

(Second) of Conflict of Laws § 6 (1971), which directs courts to evaluate the following

factors: "(a) the needs of the interstate and international systems, (b) the relevant policies

of the forum, (c) the relevant policies of other interested states and the relative interests of

those states in the determination of the particular issue, (d) the protection of justified

expectations, (e) the basic policies underlying the particular field of law, (f) certainty,

predictability and uniformity of result, and (g) ease in the determination and application

of the law to be applied;" 2) factors such as those noted in Robert A. Leflar, *Choice-*

*Influencing Considerations in Conflicts of Law*, 41 N.Y.U.L. Rev. 267, 282 (1966), namely (a)

predictability of results, (b) maintenance of interstate and international order, (c)

simplification of the judicial task (d) advancement of the forum's governmental interests,

and (e) application of the better rule of law; and 3) the Restatement (Second) of Conflict of

Laws § 193 (1971), which pertains to insurance contracts.  Section 193 of the Restatement

provides the following:

> The validity of a contract of fire, surety or casualty insurance and the rights
> created thereby are determined by the local law of the state which the parties
> understood was to be the principal location of the insured risk during the
> term of the policy, unless with respect to the particular issue, some other
> state has a more significant relationship under the principles stated in § 6 to
> the transaction and the parties, in which event the local law of the other state
> will be applied.

Based upon its evaluation of the various choice influencing factors, Mid–Continent

maintains that Florida law, and in particular, Florida's non-joinder statute, applies because

it issued the policy in Florida to a Florida corporation.  Citing <u>Allstate Ins. Co. v. Stanley</u>,

282 F.Supp. 2d 1342 (M.D. Fla. 2003), it adds that Florida's non-joinder statute is substantive and is controlling in a diversity-based federal court direct action. Mid-Continent also argues that neither the Debtor nor the Trustee has standing under Florida law to pursue the instant Declaratory Judgment Complaint because Dolphinite was neither a named insured under the policy it issued to Clean Seas nor a third party beneficiary of the insurance policy.

Mid-Continent also argues that this Court should abstain from this adversary proceeding because of its pending declaratory judgment action in Florida. It argues that Florida law predominates over bankruptcy law issues and that Florida law applies to the interpretation of the liability policy. It further argues that Florida citizens and corporations have a substantial interest in how Florida courts interpret and apply their insurance policies and that a federal judge in Florida would be more familiar with Florida law when interpreting the insurance policy at issue.

B. The Trustee

_____The Trustee maintains that Florida's non-joinder statute is inapplicable to his Declaratory Judgment Complaint because he did not seek to join Mid-Continent in the action against its insured, Clean Seas, on the question of its liability. The Trustee also maintains that he is merely pursuing a determination of the applicability of the policy to the underlying claims. Moreover, he asserts that Mid-Continent waived the non-joinder statute by commencing an action in the United States District Court for the Middle District of Florida and naming the Trustee as a defendant. Finally, the Trustee argues that because

10

the non-joinder statute is a procedural law under choice of law rules it need not be applied by this Court.

With respect to his third argument, the Trustee maintains that "[w]hat constitutes a procedural law is determined by the forum state." Relying upon Wells v. Amer. Employers' Ins. Co., 132 F.2d 316, 317 (5th Cir. 1942), he argues that the Florida non-joinder statute is procedural, and, thus, inapplicable to this proceeding.

The Trustee also urges this Court not to abstain. Because the policy of insurance does not contain a statement of governing law, he asserts that choice of law rules must be applied. Noting that the federal common law and Massachusetts choice of law rules both rely upon the Restatement (Second) of Conflict of Laws, § 193, he contends that questions regarding insurance contracts are determined by the local law of the state which was the principal location of the insured risk, unless some other state has a more significant relationship. The Trustee asserts that Massachusetts is both the principal location of the insured risk and the state with the most significant relationship to the matter. He observes that Dolphinite, a Massachusetts corporation, was the distributor of the boat hull paint; that property damage caused by the product manufactured by Clean Seas resulted from sales within Massachusetts; and that "each of the claims of the other Defendants in this action arose in Massachusetts."

The Trustee also asserts that Massachusetts has the most significant contacts for determining which law to apply. He reiterates that Dophinite, a Massachusetts corporation, is a necessary party to any determination of policy coverage, that its

11

distribution agreement with Clean Seas required the shipment of product to Massachusetts, that the claims of the Defendants are based upon sales made by a Massachusetts corporation, and that those claims have given rise to proofs of claim filed in the Debtor's bankruptcy case, which is being administered in Massachusetts.

The Trustee finally argues that this Court is as qualified as the United States District Court for the District of Florida to determine the coverage issue. He states that "[r]egardless of the applicability of Florida law, another Federal court is no better suited than this Court to make the determinations necessary in this action."

C. <u>West Marine Products, Inc. and United States Fire Insurance Co.</u>

_____West Marine and USFIC argue that Florida's non-joinder statute does not address any conflict of substantive laws; rather, in their view, it addresses only an issue of procedure. West Marine and USFIC state that the Court must first determine whether there is a conflict between the substantive laws of the interested jurisdictions. The substantive issue, they assert, is a determination of Mid-Continent's rights and obligations under a commercial general insurance policy. They argue that the declaratory judgment statutes of Florida and Massachusetts are both modeled upon the Uniform Declaratory Judgments Act, and there is no difference in the substantive law with respect to declaratory judgments.

Although West Marine and USFIC do not concede the existence of substantive conflicts, they nevertheless analyze choice of law rules, concluding that the factors outlined in cases such as <u>Millipore Corp. v. Travelers Indem. Co.</u>, 115 F.3d 21 (1st Cir. 1997), compel

12

the conclusion that this Court, or, alternatively, the United States District Court for the

District of Massachusetts, is the best forum for the resolution of the Declaratory Judgment

Complaint. They note that keeping the action in Massachusetts will maximize assets for

the benefit of the bankruptcy estate by reducing the expenses associated with proceeding

in Florida.

## IV. DISCUSSION

As a practical matter, the Court agrees with the observations made by West Marine

and USFIC. A determination by this Court of the extent of coverage or the absence of

policy exclusions in advance of the liquidation of the Trustee's claims against Clean Seas

would best conserve the limited financial resources of the bankruptcy estate and maximize

the dividend available to creditors. In the absence of the consent of Mid-Continent, that

practical solution, however, is unavailable. Based upon the Court's review of the

supplemental memoranda, the determination of legal issues, not practical considerations,

warrants dismissal of this adversary proceeding.

The parties have articulated a number of issues: 1) whether Florida's non-joinder

statute applies to this adversary proceeding, and, if so, whether Mid-Continent is entitled

to relief from the automatic stay to pursue its own Declaratory Judgment Complaint in the

United States District Court for the Middle District of Florida; and 2) assuming Florida law

does not apply, whether the Court should nonetheless abstain from this proceeding

pursuant to 28 U.S.C. § 1334(c)(1).

A. Florida Law

Florida's non-joinder statute provides in relevant part the following:

(1) It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.

(2) Notwithstanding subsection (1), any insurer who pays any taxable costs or attorney's fees which would be recoverable by the insured but for the fact that such costs or fees were paid by the insurer shall be considered a party for the purpose of recovering such fees or costs. No person who is not an insured under the terms of a liability insurance policy shall have any interest in such policy, either as a third-party beneficiary or otherwise, prior to first obtaining a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.

(3) Insurers are affirmatively granted the substantive right to insert in liability insurance policies contractual provisions that preclude persons who are not designated as insureds in such policies from joining a liability insurer as a party defendant with its insured prior to the rendition of a verdict. The contractual provisions authorized in this subsection shall be fully enforceable. . . .

Fla. St. § 627.4136. Florida court's have construed this statute to be substantive in nature. *See* Allstate Ins. Co. v. Stanley, 282 F.Supp. 2d 1342, 1343 (M.D. Fla. 2003)(citing VanBibber v. Hartford Accident and Indem. Ins. Co., 439 So.2d 880, 882-83 (Fla. 1983)). In reaching its determination that the non-joinder statute is substantive, the federal district court in Stanley relied upon the legislative intent to "'modify the third-party beneficiary concept . . . to provide that an injured party has no beneficial interest in a liability policy until that person has first obtained a judgment against an insured.'" 282 F.Supp. 2d at 1343.

In Comm. Casualty Ins. Co. of Georgia v. Haeger (In re Haeger), 221 B.R. 548 (Bankr. M.D. Fla. 1998), a Florida bankruptcy court set forth the purpose of the non-joinder statute.

14

It stated: "'[t]he public policy behind the nonjoinder statute is to ensure that jurors do not consider the existence of insurance coverage as a factor in determining liability.'" 221 B.R. at 551 (quoting Canal Ins. Co. v. Reed, 666 So.2d 888, 891 (Fla.1996)). In Haeger, the bankruptcy court permitted a former employee of the debtor to intervene in a declaratory judgment proceeding commenced by the debtor/defendant's insurer pursuant to which the insurer sought a determination as to whether its policy provided coverage of the employee's claim.

In Universal Sec. Ins. Co., Inc. v. Spreadbury, 524 So.2d 1167, 1168 (Fla. Dist. Ct. App. 1988), however, the court determined a third party cannot maintain a cause of action against an insurance company to determine if coverage existed prior to a settlement or the entry of judgment against the insured. The results in the two cases turn on the identity of the plaintiff. In Haeger, the insurance company was the plaintiff, whereas in Spreadbury, the third party was the plaintiff.

B. Massachusetts Law

Massachusetts does not have a non-joinder statute with language precisely comparable to Florida's statute. Nevertheless, it does not permit direct actions against insurers.[4] Massachusetts law provides the following:

———————————————

[4] One commentator has noted that a few states "apparently motivated by a desire to reduce the need for piecemeal litigation and to effect the disclosure of insurance companies' interests in litigation, have permitted the injured party to sue the insurer directly without first establishing the liability of the assured." Note, "Direct-Action Statutes: Their Operation and Conflict-of-Law Problems," 74 Harv.L.Rev. 357 (1960). That commentator observed the following:
Louisiana allows such direct action against all liability insurers if the

*Upon the recovery of a final judgment against any person by any person,* including executors or administrators, *for any loss or damage specified in the preceding section [§112], if the judgment debtor was at the accrual of the cause of action insured against liability therefor, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment* as provided in the ninth clause of section three of chapter two hundred and fourteen.

Mass. Gen. Laws ch. 175, § 113(emphasis supplied).

The preceding section, § 112, referenced in § 113 provides the following:

*The liability of any company* under a motor vehicle liability policy, as defined in section thirty-four A of chapter ninety, or *under any other policy insuring against liability for loss or damage* on account of bodily injury or death, or for loss or damage resulting therefrom, or *on account of damage to property, shall become absolute whenever the loss or damage for which the insured is responsible occurs, and the satisfaction by the insured of a final judgment for such loss or damage shall not be a condition precedent to the right or duty of the company to make payment on account of said loss or damage.* No such contract of insurance shall be cancelled or annulled by any agreement between the company and the insured after the said insured has become responsible for such loss or damage, and any such cancellation or annulment shall be void. An insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or claim, which may give rise to liability insured against unless the insurance company has been prejudiced thereby.

---

accident occurred within the state. Wisconsin has adopted almost identical legislation but its coverage is limited to motor vehicle policies. Rhode Island allows direct action on all locally written liability insurance policies if the assured cannot be served within the state, and Arkansas permits original suit against the insurers of charities or governmental subdivisions which would not otherwise be liable in tort. Furthermore, direct action has been judicially sanctioned in many states as an adjunct to compulsory insurance for motor-vehicle common carriers on the ground that, because the insurance requirement is primarily for the benefit of the injured party, a legislative intent to permit such action can be implied.

Id. at 357-58 (footnotes omitted).  Puerto Rico also has a direct action statute.  *See* Aponte v. Amer. Sur. Co. of N.Y., 276 F.2d 678 (1st Cir. 1960).

16

Mass. Gen. Laws ch. 175, § 112 (emphasis supplied).   Chapter 214, § 3(9), which is

referenced in § 113, pertains to actions to reach and apply the obligation of an insurance

company to a judgment debtor in satisfaction of a judgment covered by an insurance policy

which has not been satisfied within thirty days after the date when it was rendered.[5]

In John Beaudette, Inc. v. Sentry Ins. Mut. Co., 94 F.Supp. 2d 77 (D. Mass. 1999), the

district court summarized Massachusetts law, observing the following:

> In order to maintain a direct claim against an insurer, the injured plaintiff in
> the underlying action "must recover a final judgment against [the] insured"
> prior to initiating the direct action against the insurer of the defendant in the
> underlying action. Modern Continental Construction Company, Inc. v.
> United Capital Insurance Company, Inc., 1990 WL 44149 at * 1 (D. Mass.
> April 5, 1990) (citing section 113); *see* Rogan v. Liberty Mutual Insurance
> Company, 305 Mass. 186, 25 N.E.2d 188, 189 (1940) (sections 112 and 113 and
> chapter 214 afford remedy to injured plaintiff against insurer and "require
> as a prerequisite to suit 'the recovery of a final judgment' against the insured
> wrongdoer"); Lorando v. Gethro, 228 Mass. 181, 117 N.E. 185, 188 (1917)
> (noting that predecessor statute to section 112 allows "one, who has
> recovered a judgment against [the assured] on a liability, . . . ., to bring suit
> in his own name" against the insurer); Joseph R. Nolan and Laurie J. Sartorio
> 31 Massachusetts Practice § 387 (1993) (statutory action to reach and apply

---

[5] This section provides in relevant part the following:

The supreme judicial and superior courts shall have original and
concurrent jurisdiction of the following cases:
(9) Actions to reach and apply the obligation of an insurance company to a
judgment debtor under a motor vehicle liability policy, as defined in
section thirty-four A of chapter ninety, or under any other policy insuring
a judgment debtor against liability for loss or damage on account of bodily
injury or death or for loss or damage resulting therefrom, or on account of
damage to property, in satisfaction of a judgment covered by such policy,
which has not been satisfied within thirty days after the date when it was
rendered.

obligation owed to debtor by insurance company under sections 112, 113 and chapter 214 "must be instituted by the judgment creditor"); *see also* V & V Corporation v. American Policyholders' Insurance Company, 127 N.H. 372, 500 A.2d 695, 699 (1985) ("any direct suit against the insurer allowed under Massachusetts law requires as a prerequisite a 'judgment' against the insured"); *see, e.g.*, Shapiro v. State Farm Mutual Insurance Company, 355 Mass. 54, 242 N.E.2d 753, 755 (1968) (noting, in suit filed by the plaintiff, a judgment creditor of the defendant insured, that "valid judgment in the original action . . . is a prerequisite to the present suit").

94 F.Supp. 2d at 118 n. 50.

In Ioannou v. Merrimack Mut. Fire Ins. Co., No. 995902J, 2001 WL 1809800 (Mass. Super. Ct. Dec. 20, 2001), the court determined that a plaintiff was not entitled to maintain a declaratory judgment action absent a showing that "an actual controversy exists and that he/she has standing to sue." 2001 WL 1809800 at *2 (citing District Attorney for Suffolk District v. Watson, 381 Mass. 648, 659, 411 N.E.2d 1274 (1980)). The court, referencing Mass. Gen. Laws ch. 214, § 3(9) and ch. 175, § 113, explained that a tort claimant has no interest or right in an insurance contract until such time as he obtains a final judgment against the insured when he can reach and apply the insurance policy to satisfy the judgment. Id. It added: "a court may refuse to enter declaratory judgment when it '. . . would not terminate the uncertainty or controversy giving rise to the proceedings or for other sufficient reasons.'"Id. (citing Mass. Gen. Laws ch. 231A, § 3).[6] Thus, the court

---

[6] Mass. Gen. Laws ch. 231A, § 3 provides the following:

The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceedings or for other sufficient reasons. The reasons for such refusal shall be stated in the record. The failure to exhaust administrative relief prior to bringing an

18

concluded that whether or not it made a pronouncement about the parties' rights and

obligations under the policy the case against the insured had to proceed to trial on the

underlying claim of negligence. It stated: "If and when that trial results in a verdict for the

plaintiff, he can avail himself of his remedy to reach and apply the insurance policy, at

which time the dispute over coverage can be resolved." Id. See also Szafarowicz v.

Gotterup, 68 F.Supp. 2d 38, 43 (D. Mass. 1999).

C. Analysis

Because Massachusetts and Florida law do not appear to be in conflict with respect

to a third party's ability to commence a direct action against an insurance company, the

Court must determine whether the applicable provisions of state law are substantive or

procedural. Florida courts have determined that the non-joinder statute is substantive. See

Stanley, 282 F.Supp. 2d at 1343. The United States Court of Appeals for the First Circuit

has reached the same result. See Tessier v. State Farm Mut. Ins. Co., 458 F.2d 1299, 1300 (1st

Cir. 1972). In that case, the court observed the following:

> Under Massachusetts procedure the injured party's right to proceed against
> the insurer, even though it may mature at the time of the accident, cf. In re
> Fay Stocking Co., 6 Cir., 1938, 95 F.2d 961, is a two-step procedure. First, a
> judgment must be obtained against the insured. Then the insurer may be
> pursued, if the judgment is not satisfied, by a bill to reach and apply. The

---

action under section one shall not bar the bringing of such action if the
petition for declaratory relief is accompanied by an affidavit stating that
the practice or procedure set forth pursuant to the provisions of section
two is known to exist by the agency or official therein described and that
reliance on administrative relief would be futile. For the purposes of this
section practice or procedure means the customary and usual method of
conducting agency or official business.

most obvious reason for the two steps is that the insurer may have a defense, vis-a-vis its insured (except in the case of the compulsory insurance, with which we are not concerned), such as a breach of the cooperation clause. *Cf.* Potter v. Great American Indem. Co., 1944, 316 Mass. 155, 157, 55 N.E.2d 198; Goldstein v. Bernstein, 1943, 315 Mass. 329, 52 N.E.2d 559. Manifestly it is procedurally difficult, and sometimes perhaps substantively impossible, to raise this defense in conjunction with the original tort action.

With these observations as to other realities, *we turn to plaintiff's basic point that this court should be procedurally innovative and grant him the reality of pursuing directly his claim against the tortfeasor's insurer. We do not consider this procedural.* Plaintiff cites no authority to the effect that creating a direct cause of action against the insurance company is other than substantive. The latter is apparently the view in Georgia, Massachusetts and Arizona. *Cf.* Arnold v. Walton, 1949, 205 Ga. 606, 54 S.E.2d 424; Connolly v. Bolster, 1905, 187 Mass. 266, 72 N.E. 981; Haigler v. Burson, Ariz., 1931, 298 P. 404. It would be highly inappropriate for us, in a diversity case, to make new law for whichever of these jurisdictions the proper conflicts rule would hold concerned. *See* Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

458 F.2d at 1300 (emphasis supplied). *See also* Norton v. Belarus Mach. of USA, Inc., No. Civ. A. 2:03CV946-DWO, 2005 WL 1501452 at *4 (M.D. Ala. June 23, 2005).

Because the Court has determined that both Florida and Massachusetts law are substantive with respect to a third parties' right to be a direct action against an insurer, the Court concludes that a choice of law analysis is unnecessary. As noted by the First Circuit, "[t]he first step in performing a choice of law analysis is to determine whether there is a conflict between the substantive laws of the interested jurisdictions." Millipore Corp. v. Travelers Indem. Co., 115 F.3d 21, 29 (1st Cir. 1997). In the absence of a conflict between the substantive laws of the two jurisdictions, the Court concludes that regardless of whether Florida or Massachusetts law applies, the Trustee's Declaratory Judgment Complaint is premature. Until such time as there is a determination that Clean Seas is

liable to the estate of Dolphinite, the Trustee lacks standing to seek a declaratory judgment with respect to any insurance proceeds which may be available to satisfy a judgment. No such prohibition impedes Mid-Continent's declaratory judgment suit in the United States District Court for the Middle District of Florida, however.

As noted above, section 3 of Mass. Gen. Laws ch 231A provides that "[t]he court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceedings or for other sufficient reasons." Even if this Court were to entertain the Trustee's Declaratory Judgment Complaint, the action pending in the United States District Court for the District of Massachusetts with respect to Clean Seas' liability to Dolphinite would not be terminated. Accordingly, contrary to the Trustee's naked allegations as to the existence of a case or controversy, none exists which can be initiated by the Trustee.

Under these circumstances, the Court finds that Mid-Continent's Motion to Dismiss, as orally amended, to the extent it is predicated on a lack of standing, is meritorious, and thus the Trustee's Complaint for Declaratory Judgment fails to state a claim upon which relief can be granted. Further, the Court finds, in view of the Trustee's inability to bring a direct action against Mid-Continent at this juncture, that Mid-Continent has established cause for relief from the automatic stay to continue its declaratory judgment action in the Middle District of Florida. Accordingly, the Court need not address the parties' arguments with respect to permissive abstention.

At this point, it is important to emphasize that this Court's ruling is limited. The Court has not decided that Florida law applies to the interpretation of the general liability insurance policy issued by Mid-Continent. The Court makes no determination as to the understanding of the parties as to the principal location of the insured risk during the term of the policy or whether Massachusetts or Florida has a more significant relationship with respect to resolution of the parties' dispute under the principles stated in the Restatement (Second) of Conflict of Laws, §§ 6, 193. Accordingly, the Court's decision is without prejudice to the parties ability to raise these issues in another forum.

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order granting Defendant Mid-Continent Casualty Company's Motion to Dismiss, as amended, and its Motion to Lift or Modify Automatic Stay.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: December 11, 2006
cc: Joseph P. Evans, Esq., Natalie B. Sawyer, Esq., Ryan K. Hilton, Esq., Joseph J. Perrone, Esq., Stephen H. Durant, Esq.

22